**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JACQUELYN KSAIZKIEWICZ, | Case No. 1:22-cv-04884 |
| Plaintiff, | Hon. Robert W. Gettleman |
| | U.S. District Judge |
| v. | |
| ROCKET MORTGAGE, LLC, | Hon. Susan E. Cox |
| | U.S. Magistrate Judge |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT
OF ROCKET MORTGAGE LLC'S MOTION TO
<u>COMPEL ARBITRATION AND DISMISS THE COMPLAINT</u>**

## <u>INTRODUCTION</u>

In direct violation of her agreement to arbitrate (not litigate) her claims against Rocket Mortgage, Plaintiff purports to bring this lawsuit against the Company—a multiple J.D. Power award winner for customer service in mortgage loan origination and servicing—for alleged violations of the TCPA arising from purported calls and texts to her cellphone. 47 U.S.C. § 227(c)(5). This Court should foreclose this effort and compel Plaintiff's TCPA claims to arbitration just as another federal district court did less than four months ago in a TCPA suit against Rocket Mortgage involving the ***same arbitration agreement*** on ***nearly identical facts*** as are at issue in this case. *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022).

Just as the plaintiff in *Shirley*, the Plaintiff here visited and used LowerMyBills.com—a website belonging to Rocket Mortgage's affiliate LMB Mortgage Services, Inc. (d/b/a LowerMyBills.com ("LMB"))—to request mortgage refinance information from Rocket Mortgage (and others). In so doing, Plaintiff expressly agreed (twice) to the same arbitration provision contained as part of LMB's Terms of Use as the plaintiff in *Shirley*. That arbitration provision requires that Plaintiff arbitrate any TCPA and other claims against Rocket Mortgage arising from her use of and submission at LowerMyBills.com—*i.e.*, the precise claims at issue here. Indeed, in *Shirley*, the district court held that LMB's arbitration provision was enforceable by Rocket Mortgage, and that its terms were clearly and conspicuously disclosed to the plaintiff. *Id.* at *7-8. As such, the court granted Rocket Mortgage's motion and compelled plaintiff's TCPA claims to binding, non-class arbitration. *Id.* at *8. Plaintiff entered into that same arbitration agreement here. Therefore, as in *Shirley*, this Court should grant Rocket Mortgage's motion and compel this matter to arbitration.

1

## BACKGROUND

I.    **ROCKET MORTGAGE AND LMB ARE AFFILIATED COMPANIES.**

As part of its residential mortgage business, Rocket Mortgage contacts individuals who have expressed an interest in learning more about its mortgage products and consented to being contacted. While many of these individuals come to Rocket Mortgage directly (through RocketMortgage.com or by calling the Company's direct line), others like Plaintiff express their interest and provide their consent to be contacted by Rocket Mortgage through other channels, including websites run by its affiliate LMB. Courtney Decl. ¶ 3. LMB and Rocket Mortgage are both subsidiaries of RKT Holdings, LLC. Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *1.

LMB operates a free online service for consumers seeking home mortgage and refinance loans at its website, LowerMyBills.com. Viner Decl. ¶ 3. For consumers (like Plaintiff) who navigate to this website and voluntarily enter various pieces of information about themselves—such as their property address, phone number, and e-mail address—LMB will match consumers to lenders like Rocket Mortgage and other mortgage loan providers. Viner Decl. ¶¶ 4, 6. To avail themselves of this free matching service, consumers visiting the site in January 2022 (like Plaintiff) had to, among other things, first agree to be bound by LMB's Terms of Use. Viner Decl. ¶¶ 5-6. LMB's Terms of Use provide for, among other things, mandatory arbitration of all claims, disputes, and controversies with LMB and its affiliates like Rocket Mortgage arising from or relating to the use of LMB's services, including claims alleging violation of the TCPA. *Id.* Ex. 3 ¶ 2; *Shirley*, 2022 WL 2541123, at *2.

II.   **PLAINTIFF AGREED TO ARBITRATE HER CLAIMS AGAINST ROCKET MORTGAGE IN JANUARY 2022.**

According to public records, Plaintiff has owned a home at 1036 S. Chatham Ave.,

Addison, Illinois (the "Property") since late 2015. Smith Decl. Exs. 1-2. On January 20, 2022, Plaintiff visited LowerMyBills.com seeking mortgage refinance information relating to the Property. Viner Decl. ¶ 8. Plaintiff entered her information, including her name, her email address, the telephone number ending in -8820, and the address 1036 S. Chatham Ave., Addison, Illinois 60101. *Id.* The telephone number Plaintiff entered into the LowerMyBills.com website is the same as the telephone number that Plaintiff alleges in her Amended Complaint belongs to her. Am. Compl. ¶ 12, ECF No. 5.

A.    **January 20, 2022 Agreement to LMB's Consent Language and Terms of Use.**

On January 20, 2022, to complete her online request for refinance information at LowerMyBills.com, Plaintiff filled out information on five distinct pages using her mobile phone. Viner Decl. ¶ 12. LMB's disclosures, Terms of Use, and Privacy Policy were presented to Plaintiff multiple times during this process. *Id.* ¶¶ 11-17. On the fourth page, after typing in personal information including her property address 1036 S. Chatham Ave., Addison, Illinois 60101 and email address jacky.catahay@gmail.com, Plaintiff clicked a green submission button labeled "Calculate." *Id.* ¶¶ 13-14. Displayed immediately below that button was a conspicuous express disclosure providing that "[b]y clicking the button above, you agree to be contacted by LowerMyBills, at the address entered above for promotional emails *and consent, electronically via E-sign, to the LMB Lending* **_Terms of Use_**, **Privacy Policy**, and Consent to Doing Business Electronically." *Id.* ¶ 15 (emphasis added).[1] The phrase "Terms of Use" was a hyperlink that was underlined and appeared in blue text. *Id.* Clicking on the words "Terms of Use" took the consumer to LMB's complete Terms of Use, which included the subject arbitration provision discussed in Section B, *infra*, enabling the consumer to review the terms before clicking the "Calculate" button

---

[1] Displayed below this language was the text: "Featured Provider Quicken Loans" (now known as "Rocket Mortgage"). *Id.* ¶ 15.

to agree to them. *Id.*

On the next page, Plaintiff typed in additional personal information, including her cellphone number ending in -8820. *Id.* ¶ 16. Immediately below where she entered the phone number was a disclosure stating: "Enter your phone number above to receive automated and/or pre-recorded calls only from us and/or the providers that are matched to you." *Id.* Ex. 1 p. 8. Below this disclosure, Plaintiff clicked a green "Calculate your FREE results" button. Viner Decl. ¶ 16. Immediately below that button was another clear and conspicuous disclosure informing Plaintiff that "[b]y clicking the button above, you express your understanding and consent, electronically via E-sign," to the following:

1. To be matched with, and contacted by, up to 5 participants in the **LMB Provider Network** about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you for marketing purposes (including through the use of an automatic telephone dialing system, artificial or prerecorded means) via telephone at the phone number provided above, on mobile devices (including SMS and MMS), and email, even if you are on a corporate, state or national Do Not call Registry. . . As an alternative, you may contact us by email at customercare@coredigital.com.

2. To the LMB Lending **Terms of Use**, **Privacy Policy**, and Consent to Doing Business Electronically.

*Id.* ¶ 17 (emphasis in original). The words "LMB Provider Network" were hyperlinked to a list identifying Rocket Mortgage as one of the lenders in the "LMB Provider Network." *Id.* ¶ 19. The phrase "Terms of Use" was also a hyperlink that was underlined and appeared in blue text. *Id.* ¶ 18. Again, clicking on the words "Terms of Use" took the user to LMB's full-text Terms of Use, which the user could again review, before clicking the green "Calculate your FREE results" button to confirm agreement to them. *Id.* ¶¶ 16-18. Thus, by clicking the "Calculate" button and the "Calculate your FREE results" button to use LMB's free service, Plaintiff twice agreed to LMB's Terms of Use setting forth "the terms and conditions applicable to [her] use of the LMB Website

4

and the products and services provided through or in connection with the LMB Website." *Id.* Ex. 1 pp. 6-8. After clicking "Calculate your FREE results," Plaintiff was shown a page showing that she had been matched with Rocket Mortgage. Viner Decl. ¶ 20.

In sum, during her online submission to LowerMyBills.com, Plaintiff was presented with clear and conspicuous disclosures and hyperlinks to LMB's Terms of Use and twice agreed to the Terms of Use through her interactions with the website.[2]

**B.    LMB's Terms of Use**

As relevant to this Motion, one of the express terms and conditions in LMB's Terms of Use to which Plaintiff twice agreed was a mandatory arbitration provision. That arbitration provision provided as follows:

> 2.  **ARBITRATION.**  YOU UNDERSTAND AND AGREE THAT **ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES**, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, **CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION**, AND THE ISSUE OF ARBITRABILITY, **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION** AT A LOCATION DETERMINED BY THE ARBITRATOR. **ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT**. . . . **NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CONSUMERS OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS** OR IN A PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES **VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL**.

---

[2] To assist the Court in its consideration of this Motion, Rocket Mortgage submits herewith a video of the current LowerMyBills.com submission forms and flow on a mobile device. Viner Decl. Ex. 2. Although the LowerMyBills.com website has had minor changes since January 2022, the appearance of the text on the current website is representative of its appearance in January 2022 when Plaintiff used the website. The video demonstrates that the Terms of Use hyperlinks were clearly presented in blue, underlined font and in close proximity to the buttons Plaintiff clicked. Viner Decl. ¶ 21, Ex. 2.

*Id.* ¶ 24 & Ex. 3 ¶ 2 (emphases added). These terms were clearly presented in all capital letters to highlight their importance.

Through Plaintiff's January 20, 2022 submission to the LowerMyBills.com website, Plaintiff agreed ***two separate times*** to LMB's Terms of Use and the mandatory arbitration provision.

### III.   THE LAWSUIT

Following Plaintiff's submission at LowerMyBills.com seeking mortgage refinance information from Rocket Mortgage (and others), LMB provided Rocket Mortgage with the information Plaintiff had submitted on LMB's website. Viner Decl. ¶¶ 4, 6, 20; Courtney Decl. ¶ 7. After receiving this information from LMB, Rocket Mortgage contacted Plaintiff by telephone to respond to her request for mortgage refinance information. Courtney Decl. ¶ 8.

On September 9, 2022, despite having agreed to arbitrate any TCPA claims against Rocket Mortgage arising from or relating to her use of LMB's services, Plaintiff filed a complaint alleging violations of the TCPA. There, she claims that, by calling and texting her cellphone in response to her submission on LMB's website, Rocket Mortgage somehow violated the TCPA. Am. Compl. ¶¶ 16, 37, ECF No. 5.

### LEGAL STANDARD

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted). In passing the FAA, Congress established a

strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) ("[F]ederal courts [are] to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms") (internal quotation marks and citation omitted). In short, federal law mandates that federal courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

When considering a motion to compel arbitration, "the Court must determine that (1) there is a valid written agreement to arbitrate; and (2) [Plaintiff]'s claims are within the scope of the arbitration agreement." *Bahoor v. Varonis Sys., Inc.,* 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)). "[T]he party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

## ARGUMENT

The LMB Terms of Use constitute a valid arbitration agreement that requires Plaintiff to arbitrate (not litigate) the TCPA claims she purports to pursue in this lawsuit. "LMB's notice of terms was conspicuous such that a reasonably prudent Internet user would have seen it," and Plaintiff "unambiguously manifested [her] assent to LMB's Terms of Use by clicking the . . . buttons." *Shirley*, 2022 WL 2541123, at *7, *8. Accordingly, the record evidence demonstrates that Plaintiff entered into a valid and enforceable arbitration agreement with LMB and Rocket

Mortgage when she agreed two times to LMB's Terms of Use and voluntarily used LMB's services to request information about a mortgage refinance from Rocket Mortgage.

I. **PLAINTIFF AFFIRMATIVELY AGREED TO LMB'S TERMS OF USE AFTER BEING ON INQUIRY NOTICE OF THEM.**

As demonstrated above on pages 3-6, *supra*, the record evidence here reveals that Plaintiff twice affirmatively agreed to LMB's Terms of Use, including the mandatory arbitration provision, during her visit to LowerMyBills.com. "State-law principles of contract formation determine whether an arbitration clause applies to a given dispute." *Craddock v. Beats Music, LLC*, 2015 U.S. Dist. LEXIS 109154, at *6 (N.D. Ill. Aug. 19, 2015) (citing *Gore v. Allitel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012)). And "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Under the law of California, which is LMB's place of business, and the place where the parties agreed the agreement was entered into (Viner Decl. Ex. 3 ¶ 2), clickwrap or hybrid clickwrap agreements like LMB's Terms of Use are enforceable where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Shirley*, 2022 WL 2541123, at *4 (citation omitted); *see also Lee v. Ticketmaster L.L.C.,* 817 F. App'x 393, 394 (9th Cir. 2020) (inquiry notice satisfied when the terms and conditions are posted through a hyperlink that is located underneath the button that the user clicked); *accord e.g.*, *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) ("Federal courts have consistently upheld clickwrap agreements."). Consistent with the *Shirley* decision, the record evidence here again demonstrates that both of these requirements for

enforceability are met.[3]

On January 20, 2021, Plaintiff visited LowerMyBills.com. At that site, she voluntarily filled out informational forms containing, among other things, her phone number and property address. Viner Decl. ¶ 8; Smith Decl. Exs. 1-2. During the visit, Plaintiff also voluntarily clicked both the "Calculate" and "Calculate your FREE results" buttons on two different pages to confirm her agreement to LMB's Terms of Use. Viner Decl. ¶¶ 11, 14, 16-17. Those Terms of Use set out "the terms and conditions applicable to [her] use of the LMB Website." *Id.* Ex. 3 p. 1. And as the record evidence demonstrates, LMB's website expressly stated in clear and conspicuous disclosures, in multiple places, that clicking on those buttons confirmed Plaintiff's agreement to LMB's Terms of Use. Viner Decl. ¶¶ 14, 17. Plaintiff thus affirmatively acknowledged her agreement to LMB's Terms of Use multiple times as part of her use of LMB's website and services.[4]

Under similar circumstances, this and other federal courts consistently hold that such affirmative acknowledgement in the face of conspicuous disclosures results in a valid contract. Indeed, as noted above, the same LMB Terms of Use were recently enforced when this Court granted Rocket Mortgage's Motion to Compel Arbitration in a suit involving the same facts as here. *Shirley*, 2022 WL 2541123, at *7-8. In *Shirley,* the court held that "LMB's notice of terms was conspicuous such that a reasonably prudent Internet user would have seen it." *Id.* at *7. The court reached this conclusion "because the hyperlink to the Terms of Use was underlined and in a

---

[3] The result would be the same under Illinois law. *Ambrosius v. Chi. Ath. Clubs, LLC*, 2021 IL App (1st) 200893, at ¶¶ 28-31 (2021). *Accord, Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *6-8 (N.D. Ill. May 15, 2020) (granting motion to compel arbitration where customer consented to arbitration in clickwrap agreement).

[4] There is little doubt that Plaintiff also had *actual* notice of LMB's Terms of Use. Rocket Mortgage reserves its right, to the extent this Motion is denied (and it should not be), to renew the motion with the benefit of discovery to establish actual notice.

blue contrasting color to the rest of the grey text. . . . A user of the website (such as Shirley) would clearly see the hyperlinks directly below the second and third buttons before he clicked on them." *Id.* The court further concluded that by clicking the "Calculate" and "Calculate your FREE results" buttons, the plaintiff "unambiguously manifested his assent to LMB's Terms of Use." *Id.* at *6, *8. It held that the plaintiff had inquiry notice of LMB's Terms of Use and, accordingly, the mandatory arbitration provision contained in those Terms of Use was enforceable. *Id.* at *8.[5] The same exact reasoning and conclusion applies here. Plaintiff visited the same website as the plaintiff in *Shirley* and similarly clicked the same two buttons to manifest her assent to the LMB Terms of Use.

This Court should follow the *Shirley* decision by again enforcing LMB's Terms of Use and granting this Motion. This conclusion is reinforced by the numerous federal court decisions enforcing arbitration provisions under factual circumstances similar to those present here. *See e.g., Ticketmaster*, 817 F. App'x at 394 (affirming enforcement of an arbitration agreement when customers clicked a "Sign In" button and, "three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (enforcing arbitration agreement when text below "Sign In" button read "By clicking Sign In, you agree to the Turbo Terms of Use"); *Pizarro v. QuinStreet, Inc.*, No. 22-02803, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (compelling arbitration when consumer clicked "See My Rates" button above disclosure stating that clicking the button constituted assent to terms).

---

[5] The LMB Terms of Use were also upheld and enforced by the Central District of California in Orders from two different judges granting defendants' motions to compel arbitration. *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), ECF No. 43; *Hill v. ActiveProspect, Inc.*, No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021), ECF No. 90.

## II.   ROCKET MORTGAGE IS ENTITLED TO ENFORCE THE LMB TERMS OF USE.

As the district court concluded (correctly) in *Shirley*, Rocket Mortgage is entitled to enforce the mandatory arbitration provision in LMB's Terms of Use.  2022 WL 2541123, at *8.  "[T]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citation omitted)). California law allows non-signatories to enforce an arbitration agreement against a signatory as a third-party beneficiary, or pursuant to equitable estoppel principles.  *See Franklin*, 998 F.3d at 876; *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 12953229, at *4 (N.D. Cal. Jan. 12, 2015); *Garcia v. Pexco, LLC*, 217 Cal. Rptr. 3d 793, 797 (Cal. Ct. App. 2017).  Both circumstances are present here.

### A.  Rocket Mortgage Is a Third-Party Beneficiary.

First, Rocket Mortgage is entitled to enforce the arbitration agreement against Plaintiff because it is a third-party beneficiary of the agreement between Plaintiff and LMB.  A non-signatory may assert rights as a third-party beneficiary "if the parties to the agreement intended the contract to benefit the third party."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).  "When an arbitration clause provides that it covers claims involving particular parties, the agreement has been made expressly for the benefit of those parties."  *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187, 188 (9th Cir. 2021).  Here, the Terms of Use were expressly intended to benefit Rocket Mortgage.  The arbitration agreement in the LMB Terms of Use requires arbitration of "ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS . . . AFFILIATES, SUBSIDIARIES, OR RELATED COMPANIES."  Viner Decl. Ex. 3 ¶ 2 (emphases added).  This language is unambiguous—the parties clearly intended

that the arbitration agreement would benefit not only LMB, but all of its affiliates and related companies. Rocket Mortgage is such a company because it is an LMB affiliate and LMB and Rocket Mortgage are both subsidiaries of RKT Holdings, LLC. Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *8 (allowing Rocket Mortgage to enforce LMB's Terms of Use as third-party beneficiary); *Hajibekyan, LLC*, 839 F. App'x at 188 (non-signatory affiliate was third-party beneficiary because arbitration agreement encompassed "any claim" "between me and you or your employees, officers, directors, *affiliates* . . .") (emphasis in original); *Lei v. Amway Corp.*, No. 14-04022, 2014 WL 12596787, at *11 (C.D. Cal. July 23, 2014); *Sun Moon Star Advanced Power, Inc. v. Chappell*, 773 F. Supp. 1373, 1376 (N.D. Cal. 1990) ("whether companies are affiliates depends upon [whether] companies are owned by the exact same individuals."); Affiliate Definition, *Black's Law Dictionary* (11th ed. 2019).

That Rocket Mortgage is an intended third-party beneficiary of the arbitration agreement is reinforced by the facts that (i) the LMB online submission forms Plaintiff completed expressly stated that "[d]ata is collected by LowerMyBills on behalf of Rocket Mortgage" (Viner Decl. ¶ 26); (ii) Plaintiff was informed that she was matched to Rocket Mortgage; and (iii) Quicken Loans is expressly identified as part of the LMB Provider Network and in the Terms of Use as an entity which may contact Plaintiff with mortgage refinance information. Viner Decl. ¶¶ 15, 19-20. Where the Plaintiff's claims arise from her use of LMB's services, and LMB's website and Terms of Use expressly disclosed that it may provide information to Rocket Mortgage, there can be no genuine dispute that the arbitration provision was intended to (and expressly does) benefit Rocket Mortgage. *See, e.g.*, *Ege v. Express Messenger Sys. Inc.*, 745 F. App'x 19, 20 (9th Cir. 2018) (defendant was third-party beneficiary where "[plaintiffs'] performance under the agreements necessarily and directly benefitted [defendant]"); *Labajo v First Int'l Bank & Tr.*, No. 14-00627,

2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014).

As it is an actual and intended third-party beneficiary of the arbitration agreement between LMB and Plaintiff, Rocket Mortgage is entitled to enforce that agreement. *See Shirley*, 2022 WL 2541123, at *8; *Ege*, 745 F. App'x at 20.

### B.    Plaintiff Is Estopped from Denying Application of The Agreement.

Rocket Mortgage is also entitled to enforce the arbitration agreement under the principles of equitable estoppel. A nonsignatory may enforce an arbitration agreement "when the claims are intimately founded in and intertwined with the underlying contract obligations." *Franklin*, 998 F.3d at 873 (citation and internal quotation marks omitted).

Here, Plaintiff's TCPA claim against Rocket Mortgage is "intimately founded in and intertwined with" her use of LMB's services, consent to calls from Rocket Mortgage, and agreement to LMB's Terms of Use. Plaintiff gave her consent to be contacted by Rocket Mortgage by phone or email during her January 2022 visit to LowerMyBills.com. *See supra* pp. 2-4. She now claims that Rocket Mortgage contacted her illegally. Compl. ¶ 25, ECF No. 5. Resolution of Plaintiff's claim thus necessarily requires this Court to consider questions that are "intimately . . . intertwined" with Plaintiff's agreements to LMB's TCPA consent disclosures on the LMB website and in LMB's Terms of Use.

Plaintiff's TCPA claim, therefore, cannot be separated from the Terms of Use, and the arbitration provision in the Terms of Use must be enforced. *See Franklin,* 998 F.3d at 874 (affirming that plaintiff was equitably estopped from avoiding arbitration with nonsignatory); *Shivkov v. Artex Risk Sols., Inc.,* 974 F.3d 1051, 1070 (9th Cir. 2020) (allowing nonsignatories to compel arbitration; "allegations about Defendants' misconduct [] presume and 'intimately rel[y]'

on the existence of the Agreements") (citation omitted), *cert denied*, 141 S. Ct. 2856 (2021).[6]

Further, the arbitration agreement should be enforced as a matter of equity. After submitting her information, and consistent with LMB's disclosure about its services, Plaintiff was matched with providers of mortgage services and received mortgage loan refinance information. Viner Decl. ¶¶ 6, 20; Courtney Decl. ¶¶ 7-8. Plaintiff cannot take advantage of the benefits of contracting with LMB, but then seek to avoid the arbitration agreement. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation and internal quotation marks omitted).

## III. WHILE THE ISSUE IS EXPRESSLY RESERVED TO THE ARBITRATOR, THIS DISPUTE DOES NOT FALL OUTSIDE THE ARBITRATION AGREEMENT.

Because there is a valid arbitration agreement, enforceable by Rocket Mortgage, the only remaining question is whether Plaintiff's claims here fall within the substantive scope of the arbitration provision. Under the express terms of the agreement, however, that question is reserved for the arbitrator. Specifically, the Terms of Use require that "ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT." Viner Decl. Ex. 3 ¶ 2. When the parties have contracted to delegate the arbitrability determination to an arbitrator, courts are not permitted to "short-circuit the process and decide the arbitrability question themselves." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019). Therefore, because there is a valid arbitration agreement that Rocket Mortgage is entitled to enforce, this Court should compel

---

[6] *See also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases; "a signatory was bound to arbitrate with a nonsignatory … because of 'the close relationship between the entities involved [and] the relationship of the alleged wrongs to the nonsignatory's obligations and duties").

arbitration and permit the arbitrator to resolve any disputes about arbitrability.

Even assuming this Court may properly consider the arbitrability question, however, the LMB Terms of Use confirms that it unquestionably "encompasses the dispute at issue." *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). That provision broadly covers:

> ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION. . .

Viner Decl. Ex. 3 ¶ 2. Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching." *Chiron*, 207 F.3d at 1131. Plaintiff's TCPA claim against an LMB affiliate and related entity falls squarely within this broad agreement to arbitrate "ALL CLAIMS," including federal statutory claims against LMB and its affiliates. *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1204 (N.D. Cal. 2015) ("[T]he party opposing arbitration . . . bears the burden of proving any defense.") (citation and internal quotation marks omitted), *aff'd in part, rev'd in part, remanded*, 848 F.3d 1201 (9th Cir. 2016). Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

## CONCLUSION

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court compel Plaintiff's individual claim to arbitration and dismiss the Complaint.

Dated:  October 25, 2022

Respectfully submitted,

/s/ Alan M. Ritchie
Tierney E. Smith (*pro hac vice*)
W. Kyle Tayman (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
TierneySmith@goodwinlaw.com
KTayman@goodwinlaw.com

Alan M. Ritchie
Pilgrim Christakis LLP
One South Dearborn, Suite 1420
Chicago, Illinois 60603
Tel.: (312) 924-1773
Fax: (312) 939-0983
aritchie@pilgrimchristakis.com

*Counsel for Rocket Mortgage, LLC*

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on October 25, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  The video exhibit that was uploaded via the CM/ECF media upload was served on counsel by e-mail at spigozzi@edcombs.com and hkolbus@edcombs.com.


            /s/ Alan M. Ritchie
            Alan M. Ritchie